IN THE UNITED STATES DISTRICT COURT FOR
THE CENTRAL DISTRICT OF ILLINOIS

JERMALE MURPHY, SR. and MEGAN )
WHITNEY, as Special Administrators of )
the Estate of JERMYLIN DEYVAUGHN )
MURPHY, deceased, )
)
    Plaintiffs, )    09 CV 02062
)
v. )
)
FISHER-PRICE, INC. and )
TARGET CORPORATION, )
)
    Defendants. )

## PLAINTIFFS' SECOND MOTION TO COMPEL DISCOVERY FROM DEFENDANT FISHER-PRICE, INC. AND UNOPPOSED MOTION FOR EXTENSION OF TIME TO CONDUCT LIMITED DISCOVERY

    Plaintiffs, Jermale Murphy, Sr. and Megan Whitney, as Special Administrators of the Estate of Jermylin Deyvaughn Murphy, deceased, by and through their undersigned counsel and pursuant to Rules 34 and 37 of the Federal Rules of Civil Procedure, move for an order compelling discovery from Defendant Fisher-Price, Inc. and for an unopposed extension of time to conduct limited discovery. In support thereof, Plaintiffs state:

    1.    This is an action for personal injuries to, and the wrongful death of, Jermylin Murphy. (Doc. 21, ¶1). Jermylin Murphy died at the age of eight months while using a baby swing that was designed and distributed by Defendant Fisher-Price, Inc. ("Fisher-Price") and sold to Plaintiffs by Defendant Target Corporation ("Target"). (Doc. 21, ¶¶5 - 7). Plaintiffs, as the surviving mother and father of Jermylin Murphy and Special Administrators of his Estate, assert causes of action for strict liability (Count I), breach of implied warranty of merchantability (Count II), negligence (Count III), and violations of the Consumer Product Safety Act (Count IV). (Doc. 21).

2. In summary, Plaintiffs allege their son was in the subject baby swing when the swing's seat failed by collapsing on him as a result of the seat back collapsing or folding forward, causing him to become wedged and entrapped within the seat until his death by positional asphyxia. A detailed description of the swing's seat's failure and the specific manner and cause of Jermylin Murphy's death is set forth in the Rule 26(a)(2) report of Plaintiffs' expert in forensic pathology, Dr. Andrea Minyard, which is attached hereto as **Exhibit "1."** To assist with a general understanding of Plaintiffs' contentions as to the failure of the swing's seat, six photographs prepared by Plaintiffs' engineering expert, Dr. Charles Benedict, depicting the baby swing model in issue and the approximate manner in which the seat failed resulting in Jermylin Murphy's death are attached hereto as composite **Exhibit "2."**

3. On March 4, 2010, Plaintiffs served by facsimile and U.S. Mail their Notice of Taking Videotaped Deposition Duces Tecum of Corporate Representative of Defendant Fisher-Price, Inc. A copy of said notice is attached hereto as **Exhibit "3."** Schedule "A" to the deposition notice requests Fisher-Price to produce a representative with knowledge as to seventeen specific enumerated areas. Schedule "B" to the deposition notice requests Fisher-Price to produce at the deposition five enumerated categories of documents. On March 22, 2010, Plaintiffs served an amended notice for the deposition, amending the location for the deposition. A copy of the amended notice is attached hereto as **Exhibit "4."** Both Schedules "A" and "B" to the amended notice were unchanged from Plaintiffs' original March 4, 2010 notice for the deposition of Fisher-Price's corporate representative.

4.  The deposition of Fisher-Price's Rule 30(b)(6) corporate representative, as well as the deposition of a Fisher-Price engineering manager responsible for the fabric portion of the swing's seat, were scheduled to occur on April 22nd and 23rd, 2010, either in East Aurora, New York or Buffalo, New York.[1]

5.  On April 15, 2010, well over 30 days after Fisher-Price first received the initial Rule 30(b)(6) notice for its corporate representative's deposition, Plaintiffs' received by e-mail a Response of Defendant Fisher-Price, Inc. to Plaintiffs' Amended Notice of Deposition Duces Tecum of Corporate Representative. A copy of said response is attached hereto as **Exhibit "5."** In its response, Fisher-Price asserts objections to every single area of inquiry enumerated in Schedule "A" and all five categories of documents requested in Schedule "B" to the deposition notice. Fisher-Price further states in its response that is objecting to producing any corporate representative with knowledge of the subject matter areas specified in Paragraphs 15, 16, and 17 of Schedule "A."

6.  Fisher-Price's objections are untimely under Federal Rules of Civil Procedure 30(b)(5) and 34(b), and have therefore been waived. The objections are further substantively without merit and should be overruled.

7.  Plaintiffs move to compel Fisher-Price to produce a corporate representative with knowledge of the areas specified in Paragraphs 15 and 16 of Schedule "A," and to produce all documents in its possession, custody or control responsive to Paragraphs 1, 4 and 5 of Schedule "B."

---

[1] The location for the taking of Fisher-Price's corporate representative's deposition is currently the subject of a Motion for Protective Order recently filed by Fisher-Price and pending before the Court.

## SCHEDULE "A"

8. Paragraph 15 of Schedule "A" requests Fisher-Price to designate an individual with knowledge of "[t]he marketing and advertising of the swing model for sale, including any advertising literature or advertising media such as newsprint and television." Fisher-Price responded by stating: "Fisher-Price, Inc. objects to producing a witness with knowledge of the subject matter areas specified in Paragraph #15 because this part of the notice seeks information which is not reasonably calculated to lead to the discovery of admissible evidence and which is irrelevant to any issue in this lawsuit."

9. Fisher-Price's objections to Paragraph 15 should be overruled because the area of inquiry is reasonably calculated to lead to the discovery of admissible evidence in the case. Fisher-Price's marketing and advertising as to the manner of use of the swing by its users and consumers, such as the swing's use as a sleeping environment for its infant users, is relevant to both Plaintiffs' claims and Fisher-Price's affirmative defenses in the case. Fisher-Price asserts two affirmative defenses to Plaintiffs' claims: (1) that Plaintiffs were contributory negligent, and (2) that Plaintiffs assumed the risk of serious injury and/or death of their son. (Doc. 25). Fisher-Price's contributory negligence affirmative defense asserts in part that Plaintiffs "[c]arelessly and negligently failed to properly attend, watch, and supervise their 8 month old child as he sat in the Fisher-Price swing." Fisher-Price further contends Plaintiffs negligently assembled and maintained the swing and negligently failed to follow instructions with the swing. (Doc. 25). Fisher-Price's marketing and advertising therefore is reasonably calculated to lead to the discovery of admissible evidence in the

4

case as to Fisher-Price's suggested or demonstrated manners of use, assembly and maintenance of the swing by infants and their parents.

10. Paragraph 16 of Schedule "A" requests Fisher-Price to designate an individual with knowledge of "Fisher-Price's distribution of the swing into and within the United States." Significantly limiting the scope of this request, the term "swing" is defined on page 2 of the deposition notice as "the specific Fisher-Price Rainforest Open Top Take-Along Swing, product number K7203, date code 3126SJ, that is the subject of this action and currently in the custody of the Decatur Police Department." Accordingly, the subject of Paragraph 16 is limited only to the one swing that was used by Jermylin Murphy at the time of his death, and does not even include the distribution of other swings of the same model. Nonetheless, Fisher-Price responded by again stating: "Fisher-Price, Inc. objects to producing a witness with knowledge of the subject matter areas specified in Paragraph #16 because this part of the notice seeks information which is not reasonably calculated to lead to the discovery of admissible evidence and which is irrelevant to any issue in this lawsuit."

11. Fisher-Price's objections to Paragraph 16 should be overruled because the area of inquiry is reasonably calculated to lead to the discovery of admissible evidence in the case. Fisher-Price's employees whose depositions have been taken in the case to date have not had knowledge of the specific swing's distribution from its manufacturer in China to Fisher-Price's distribution center(s) to the Target retail store in Decatur, Illinois where the swing was purchased. Perhaps most important about information as to the subject swing's distribution are the dates it was distributed into the United States and when it was distributed to Defendant Target and left the control of Defendant

Fisher-Price. Fisher-Price has denied in its answer to the Amended Complaint and demanded strict proof of Plaintiffs' allegations that the subject baby swing was purchased by Plaintiffs in the spring of 2007 at Target's retail store in Decatur, Illinois. (Doc 25, ¶7). As such, matters relating to the swing's distribution from Fisher-Price to Plaintiffs is clearly reasonably calculated to lead to the discovery of admissible evidence.

### SCHEDULE "B"

12. Plaintiffs further move to compel Fisher-Price to produce all documents in its possession, custody or control requested in Paragraphs 1, 4 and 5 of Schedule "B" to the deposition notice of its corporate representative.

13. Paragraphs 1 and 4 of Schedule "B" request Fisher-Price's corporate representative to have with him or her at the deposition documents relating to consumer and retailer complaints and reports of other accidents or incidents with the swing model that involve the same or similar problems and defects in the swing's seat that Plaintiffs contend resulted in the death of their son. Paragraph 4 also includes documents relating to consumer and retailer complaints and reports as to Fisher-Price's recall of the baby swing in issue (seven months before Jermylin Murphy's death), which recall Plaintiffs' allege was untimely and negligently carried out by Fisher-Price. After consideration of Fisher-Price's partial response to Paragraph 4 that it has no documents responsive to some of its subparagraphs, it is only Fisher-Price's failure to produce the documents relating to the following subparagraphs of Paragraph 4 that remain in dispute:

    c.    **1008 Head or neck entrapment**
    e.    **1100 Consumer expresses product concern**
    f.    **1122 Entrapment**

g.   1367 Product tips over
i.   2507 Child out of position or fall/climb out
l.   3120 Falls apart/off or disassembles
m.   4252 2007 Rain Forest T/A swing recall
o.   5126 Missing hardware
p.   5130 Missing parts (other)
r.   7133 Product received (safety return)
s.   7134 Recall part or product returned
u.   7522 Inquiry to confirm correct usage
x.   8143 General recall inquiry
y.   8305 Objects to policy or action taken
bb.  8370 Regulatory contact (IDI)
cc.  8371 Retail incident report

14.   Fisher-Price objects to producing the requested documents in Paragraphs 1 and 4, asserting the requests are "overlybroad, burdensome, not reasonably calculated to lead to the discovery of admissible evidence," and because they seek documents Fisher-Price concludes "relate to incidents and injuries which occurred in a manner not substantially similar to the claimed incident in this lawsuit."

15.   The requests in Paragraphs 1 and 4 of Schedule "B" were formed based on other Fisher-Price documents previously produced in discovery. Because Fisher-Price contends the documents from which the requests were formed are confidential and therefore subject to the Court's Protective Order Regarding Production of Confidential, Proprietary and Trade Secret Information (Doc. 16), Plaintiffs intend to file under seal a supplemental memorandum in support of this motion with respect to the documents within five days of the filing of this motion.

16.   Since the issues presented in this motion involve merely the discovery of the requested documents and not their admissibility, Fisher-Price's substantial similarity argument in response to Paragraphs 1 and 4 of Schedule "B" is premature and unsupported. Documents need not

be admissible to be discoverable. Fisher-Price's objections to Paragraphs 1 and 4 should be overruled for the reasons set forth in the memorandum of law below and the supplemental memorandum Plaintiffs intend to file under seal in further support of this motion. Specifically, the documents are reasonably calculated to lead to the discovery of admissible evidence as to (1) the existence of the dangers, (2) Fisher-Price's knowledge of the dangers, and (3) the cause of Jermylin Murphy's death. The specific issues referenced in the request are the same or similar to those Plaintiffs' contend resulted in Jermylin Murphy's death. Accordingly, Fisher-Price should be compelled to produce the documents requested in Paragraphs 1 and 4 of Schedule "B."

17. Paragraph 5 of Schedule "B" requests Fisher-Price to produce "documents relating to any possible risk, hazard, or danger to infants by flexion or obstruction of an infant's neck, the compromising of an infant's breathing or narrowing of an infant's airway, an infant's chin on his or her chest, the slumping forward of an infant's head, or the folding down of an infant's head." Fisher-Price objects to producing the requested documents in Paragraph 5, contending yet again that the request is "overly broad, burdensome, not reasonably calculated to lead to the discovery of admissible evidence," and "not confined to reports of injuries or incidents which occurred or are claimed to have occurred in a manner substantially similar to the claimed incident in this lawsuit."

18. Fisher-Price's objections to Paragraph 5 of Schedule "B" should again be overruled because the documents requested are reasonably calculated to lead to the discovery of admissible evidence in the case. As described in the expert report of Dr. Andrea Minyard ( **Exhibit "1"**) the specific risks, hazards and dangers referenced in the request are the same as those Plaintiffs' contend caused Jermylin Murphy's death after the baby swing collapse on him. Most, if not all, of Fisher-

Price's employees have denied the swing's seat posed these potentially deadly risks, hazards and dangers. Documents in Fisher-Price's possession, custody or control relating to these specific issues in controversy in this case are therefore reasonably calculated to lead to the discovery of admissible evidence. Fisher-Price should be compelled to produce them.

19.     Plaintiffs' undersigned counsel certifies that Plaintiffs have in good faith conferred with Fisher-Price's counsel in an effort to secure the discovery disputed in this motion without Court action, and the issues have not been resolved. The parties have, however, agreed to postpone the depositions of Fisher-Price's corporate representative and its fabric engineering manager scheduled for April 22nd and 23rd, 2010 in New York until the issues presented in this motion are resolved by the Court. Defendants' counsel further has informed Plaintiffs' counsel that Defendants have no objection to Plaintiff's request to extend the current discovery deadline of April 30, 2010 for the limited purpose of conducting those depositions after the Court has ruled on this motion.

WHEREFORE, Plaintiffs respectfully request the Court to enter an order:

(1)     Compelling Fisher-Price to produce a corporate representative with knowledge of the areas specified in Paragraphs 15 and 16 of Schedule "A" to the corporate representative deposition notice within 45 days of the Court's order;

(2)     Compelling Fisher-Price to produce all documents in its possession, custody or control responsive to Paragraphs 1, 4 and 5 of Schedule "B" to the corporate representative deposition notice;

(3)  Extending the deadline to depose Fisher-Price's corporate representative and its engineering manager, initially scheduled for April 22nd and 23rd, 2010, by 45 days from the date of the Court's order; and

(4)  Awarding Plaintiffs' their reasonable expenses and attorneys' fees incurred in obtaining the order pursuant to Federal Rule of Civil Procedure 37.

## MEMORANDUM OF LAW

### I.  The Scope of Discovery

Federal Rule of Civil Procedure 26(b)(1) permits the discovery of any matter relevant to the subject matter of the pending action, so long as the information is not privileged, if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. The Supreme Court has interpreted relevance broadly to include any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Petrovic v. City of Chicago, 2007 WL 2410336 (N.D. Ill. 2007). Evidence need not be admissible to be relevant. *See* Id. A request for discovery should be considered relevant "if there is any possibility that the information sought may be relevant to the subject matter of the action.... Discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action... The scope [of discovery] should not be curtailed unless the information sought is clearly irrelevant." Roesberg v. Johns-Manville Corp., 85 F.R.D. 292, 296 (E.D. Penn. 1980) (citing *e.g.* Miller v. Doctor's General Hospital, 76 F.R.D. 136, 138-139 (W.D. Okl. 1977) and In

re Folding Carton Antitrust Litigation, 83 F.R..D. 251, 254 (N.D. Ill. 1978)). The detail in the complaint specifies the necessary relevance of the discovery. Roesberg, 85 F.R.D. at 297.

When asserting objections such as relevancy or overly broad, the objecting party "must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [discovery request] is not relevant or how it is overly broad, burdensome or oppressive." Id. at 296 (citing e.g. Stanley Works v. Haeger Potteries, Inc., 35 F.R.D. 551, 555 (N.D. Ill. 1964) and Trabon Engineering Corp. v. Eaton Manufacturing Co., 37 F.R.D. 51, 54 (N.D. Ohio 1964)). General objections without specific support may result in waiver of the objections. Id.; In re Folding Carton Antitrust Litigation, 83 F.R..D. at 264.

## II. The Discovery and Admissibility of Other Accidents or Incidents

"Evidence of other accidents in products liability cases is relevant to show notice to the defendant of the danger, to show existence of the danger, and to show the cause of the accident." Nachtsheim v. Beech Aircraft Corp., 847 F.2d 1261, 1268 (7th Cir. 1988) (citing Gumbs v. International Harvester, Inc., 718 F.2d 88, 97 (3rd Cir. 1983) (citations omitted)); Ross v. Black & Decker, Inc., 977 F.2d 1178, 1185 (7th Cir. 1992). Where the evidence is proffered to show the existence of a dangerous condition or causation, the jury is invited to infer from the presence of other accidents (1) that a dangerous condition existed (2) which caused the accident. Nachtsheim, 847 F.2d at 1268 (citations omitted). Further, the fact that some other accidents have occurred after a plaintiff's injury does not make evidence concerning them any less probative of the unreasonably dangerous design and condition of the product or of the cause of the accident. Id.; Ross, 977 F.2d at 1185.

Before evidence of other accidents is admitted at trial, however, the proponent must show that the other accidents occurred under substantially similar circumstances. Id. (citing Borden, Inc. v. Florida East Coast Ry. Co., 772 F.2d 750, 750 (11th Cir. 1985)). "The requirement of similarity is less strict when the evidence is sought to be admitted to show notice." Id. For purposes of showing notice, previous injury need only be such as to attract the defendant's attention to the dangerous situation. Id. at 1269 (citing Elsworth v. Beech Aircraft Corp., 691 P.2d 630, 639 (Cal. 1984), *cert. denied*, 471 U.S. 1110 (1985).

Prior to trial, however, the test for relevance in the discovery context is an extremely broad one. Am Int'l, Inc. v. Eastman Kodak Co., 100 F.R.D. 255, 257 (N.D. Ill. 1981). A request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action. Id.; In re Folding Carton Antitrust Litigation, 83 F.R.D. 251. "It is not ground for objection that the information will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Dollar v. Long Mfg. N.C., Inc., 561 F.2d 613, 617 (5th Cir. 1977). It is important to distinguish the right to obtain information by discovery from the right to use it at trial. Paulson v. Case Corp., 168 F.R.D. 285, 288 (C.D. Cal. 1996) (*quoting* Nestle Foods Corp. v. Aetna Casualty & Surety Co., 135 F.R.D. 101, 104 (D.N.J. 1990) (citations omitted). In order to be entitled to discovery concerning other incidents, plaintiffs need not lay the same foundation concerning substantial similarity as would be necessary to support admission into evidence. *See* Uitts v. General Motors Corp., 58 F.R.D. 450, 452-53 (E.D. Pa. 1972). For discovery purposes, the court need only find that the circumstances surrounding the other accidents are similar enough that discovery

12

concerning those incidents is reasonably calculated to lead to the uncovering of substantially similar-occurrences. Id.; Peterson v. Auto Wash Mfg. & Supp. Co., 676 F.2d 949, 953 (8th Cir. 1982); Kramer v. Boeing Co., 126 F.R.D. 690, 692-95 (D. Minn. 1989); Lohr v. Stanley-Bostitch, Inc., 135 F.R.D. 162, 164 (W.D. Mich. 1991); Librado v. M.S. Carriers, Inc., 2003 WL 22768675 (N.D. Tex. 2003); Cardenas v. Dorel Juvenile Group, Inc., 230 F.R.D. 611, 633 (D. Kans. 2005).

### III. Plaintiffs' Entitlement to Expenses, Including Attorneys' Fees

Federal Rule of Civil Procedure 37 states in relevant part that if a motion to compel for failure to make discovery

> **is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure of discovery without court action or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.**

Fisher-Price's failure to produce a corporate representative and the documents with respect to the issues above and its opposition to this motion are unjustified in light of the discovery sought. As such, Plaintiffs are entitled to their reasonable expenses and attorneys' fees incurred in obtaining an order from the Court on these issues.

\* \* \* \* \*

13

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2010, I electronically filed the foregoing with the Court's CM/ECF system which will send notification of such filing to the following:

C. Barry Montgomery
Edward J. Murphy
Williams Montgomery & John, Ltd.
233 S. Wacker Drive, Suite 6100
Chicago, IL 60606-6359
Attorneys for Defendants

/s/ Shane M. Dean
      Shane M. Dean
Florida Bar No.: 499889
BOZEMAN, JENKINS & MATTHEWS, P.A.
114 East Gregory Street (32502)
Post Office Box 13105
Pensacola, FL 32591-3105
(850) 434-6223 Telephone
(850) 434-5242 Facsimile
Email: sdean@bjm-law.com

Gary F. Geisler
Illinois Bar No.: 00930350
GEISLER LAW OFFICES
241 South Main Street
Post Office Box 1547
Decatur, IL 62525-1547
(217) 423-8081 Telephone

Attorneys for Plaintiffs