28073.00A2B9/bg/Document #: 853308

IN THE UNITED STATES DISTRICT COURT FOR
THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JEREMALE MURPHY SR. and MEGAN WHITNEY, as Special Administrators of the Estate of JERMYLIN DEVAUGHN MURPHY, deceased, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 09 CV 02062 |
| FISHER-PRICE, INC., and TARGET CORPORATION | ) ) ) ) | |
| Defendant. | ) ) ) | |

## BRIEF OF FISHER-PRICE, INC. IN OPPOSITION TO THE PLAINTIFFS' SECOND MOTION TO COMPEL DISCOVERY

Now comes the defendant, FISHER-PRICE, INC. (Fisher-Price), by and through its attorneys, Edward J. Murphy, C. Barry Montgomery, and WILLIAMS MONTGOMERY & JOHN LTD., and for its Brief in Opposition to the Plaintiffs' Second Motion to Compel Discovery states as follows:

### INTRODUCTION - FACTUAL AND PROCEDURAL BACKGROUND

1. This is a products liability case in which the plaintiffs have alleged that a baby swing, Model K7203, designed and sold by Fisher-Price was "in a defective condition unreasonably dangerous to its users..." and that this defective condition proximately caused the death of the plaintiffs' decedent. (Amended Complaint, Doc. 21, ¶¶ 12 and 15). The accident was unwitnessed and, therefore, the plaintiffs have retained experts to reconstruct the accident and offer opinions as to the cause of death. The product defect alleged by the plaintiffs is a design which allows the seatback of the swing to fold forward. The plaintiffs' retained experts

1

have opined that the decedent died because the swing's seatback folded forward causing "positional asphyxia" and that "Fisher-Price should have designed the subject swing such that the seatback could not collapse forward, as it did in this incident..." (See Benedict Report, Ex. A, p. JM00859). Fisher-Price admitted in its answer to the Amended Complaint that it designed, tested, supplied, distributed, promoted, marketed, advertised, and sold the model swing involved in the alleged occurrence. (Doc. 25, ¶ 6) Fisher-Price has also admitted on information and belief that the Model K7203 swing was sold by Fisher-Price to Target Corporation. (Ex. B, Fisher-Price's Response to Plaintiffs' Second Request for Admissions, ¶¶ 12, 14).

2. Model K7203 swings bear an alpha-numeric code number which indicates the date the swing was manufactured. The swing involved in this incident was manufactured on November 8, 2006. The swings do not have serial numbers which would allow one to trace the path of any specific swing from the place of manufacture to its sale at retail. The plaintiff, Megan Whitney, testified at her deposition that she purchased the swing for cash from the Target Corporation retail store in Decatur, Illinois in February, 2007. Neither Fisher-Price nor Target is in possession of any evidence, documentary or otherwise, which would confirm or refute Ms. Whitney's testimony regarding the purchase. A change was made to the design of the Model K7203 swing as of March 14, 2006 which added a "plastic boss" to the seat hub prevent the seatback from folding forward beyond a certain point. (See Ex. C, photograph of seat hub). The plaintiffs' swing was manufactured before that date and, therefore, was not equipped with this design feature. (See Ex. D, photographs of accident swing taken on July 16, 2009 at the Decatur Police Department). On May 30, 2007 Fisher-Price voluntarily recalled the Model K7203 swing due to problems unrelated to the seatback folding forward. (See J. Taft deposition, Plaintiffs' Ex. 6, p. 113- attached to Doc 37; C. Pilarz deposition, Ex. E, pp. 103-04; C. Pilarz report, Ex. F, pp. 3-4; M. Steinwachs' report, Ex. G, p. 2). Fisher-Price had received multiple complaints that

infants could shift to one side of the swing and become caught between the frame and the seat including reports that infants had become entrapped resulting in cuts, bumps, bruises and red marks. (See Ex. H, Consumer Product Safety Commission Announcement, FP000212-13).

3. Extensive discovery has been conducted in this case. Fisher-Price has presented seven employees for depositions in September, 2009 and has agreed to produce employees for two additional depositions which will be scheduled after the Court rules on the plaintiffs' Motion to Compel Discovery and another pending motion. (See Fisher-Price's Motion for Protective Order and Plaintiffs' response, Doc. #34 & 35). Fisher-Price has produced in excess of 6,540 pages of documents in response to four Requests for Production. Fisher-Price has answered two sets of interrogatories (35 interrogatories some with multiple subparts) and responded to two sets of Requests for Admissions encompassing 121 requests.

4. On April 16, 2010 the plaintiffs filed a Motion to Compel discovery from the responding defendant, Fisher-Price, Inc. (Fisher-Price). (Doc. #36). On April 28, 2010 the plaintiff s filed a Supplemental Memorandum in support of their motion. (Doc. #37 filed under seal). On May 5, 2010 the Court entered a Text Order extending the time for the response of Fisher-Price to May 12, 2010. For the reasons stated in the instant brief the plaintiffs' motion to compel is not well taken and should be denied. The discovery requests at issue are overbroad and not reasonably calculated to lead to the discovery of admissible evidence.

5. The plaintiffs' motion concerns to two categories of discovery requests included in Schedules A and B of a rider attached to an Amended Notice of Deposition Duces Tecum served upon Fisher-Price pursuant to Federal Rule of Civil Procedure 30(b)(6) on March 22, 2010 (Exhibit 4 to plaintiff's motion, Doc. #36-4). At issue are: (1) Paragraphs 15 and 16 of Schedule A which seek deposition testimony from corporate witnesses knowledgeable about the marketing, advertising, and distribution of the Fisher-Price Model K7203 swing; and (2)

Paragraphs 1, 4, and 5 of Schedule B which seek production of documents related to broad categories of consumer complaints, alleged product defects and product malfunctions. The documents sought by these latter requests are unrelated to the alleged product defect which the plaintiffs' contend caused the death of their decedent or to the manner in which they claim the accident occurred. Fisher-Price has already produced all relevant non-privileged documents related to the subject matter of these requests.

6. <u>Plaintiffs' waiver argument</u> - The plaintiffs initially claim, incorrectly, that Fisher-Price's objections are untimely (Doc. #36, p. 3). The objections were made in response to the plaintiffs' Amended Rule 30(b) (6) Deposition Notice and the attached rider which was served on March 22, 2010. (See Exhibit 4 to plaintiffs' Motion, Doc. #36-4, p. 8). The objections were served on April 15, 2010, 23 days thereafter. The plaintiffs claim that Fisher-Price objections are untimely because they were served more than 30 days after service of a previous deposition notice on March 4, 2010. However, that notice was deficient in that it did not state a date or a time for the requested deposition as required by Rule 30(b)(1). Two additional notices, proper in form, were subsequently served by the plaintiffs on March 19 and March 22, 2010. Regardless of whether the 30 day time period is counted from the March 19 notice or the March 22 notice the Fisher-Price objections were made within 30 days and, therefore, were timely.[1]

## LAW GOVERNING DISCOVERY

1. Federal Rule of Civil Procedure 26(b) provides that parties "may obtain discovery regarding any non-privileged matter that is **relevant** to any party's claim or defense...[r]elevant information need not be admissible at the trial if the discovery appears **reasonably calculated to**

---

[1] It should also be noted that Rule 30 does not specifically provide a time limit for the serving of objections. Rule 30(b) (2) states that "a notice to a party deponent may be accompanied by a request under Rule 34 to produce documents and tangible things **at the deposition**." (Fed.R.Civ.P. 30(b)(2), emphasis added) The plaintiffs' motion cites the 30-day limit imposed by Rule 34 which governs responses to requests for production of documents but the plaintiffs' notices do not reference Rule 34.

4

**lead to the discovery of admissible evidence."** (emphasis added) Although the concept of relevance in discovery is broader than that required for admissibility at trial "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." *Piacenti v. General Motors Corporation*, 172 FRD 221, 223. (N.D.Ill. 1997). The scope of discovery is limited to information which is "relevant to the subject matter involved in the pending action". *Id.* at 224 quoting *National Paint & Coatings Ass'n v. City of Chicago*, 147 FRD184, 185 (N.D.Ill. 1993). "The legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." *Id.* citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). Federal Rule of Civil Procedure 26(b) (C) provides that "the court must limit the frequency or extent of discovery otherwise allowed by these rules or local rules if it determines that…the party seeking discovery has had ample opportunity to obtain the information by discovery…or…the burden or expense of the proposed discovery outweighs its likely benefits…"

2. In order to determine whether a discovery request is reasonably calculated to lead to the discovery of admissible evidence the court must consider the scope of evidence that will be admissible at trial. See *Uitts v. General Motors Corporation*, 60 FRD 560, 561 (E.D. PA. 1974). Evidence of "other accidents" in products liability cases may be admissible to show: (1) notice to the defendant of a dangerous condition of the product; (2) the existence of the product's dangerous condition; or (3) the cause of the accident. *Nachtsheim v. Beach Aircraft Corporation*, 847 F.2d 1261, 1268 (7th Cir. 1988). However, before such evidence is admitted at trial the proponent of the evidence must show that the other incidents occurred under substantially similar circumstances. *Id.* Therefore, evidence of other incidents has no probative

value unless they were caused by the same or similar product defect or occurred in a manner which is the same or substantially similar to the accident in the case at bar.

3. "The only reason that evidence of other accidents is admissible at all is that the substantial similarity between the other accidents and the one in question supports a reasonable inference of the existence of a dangerous condition." *Lohr v. Stanley-Bostitch, Inc.*, 135 FRD162, 164-65 (W.D.MI 1991) citing *Nachtsheim, supra,* at 1268-69. A discovery request seeking information regarding other incidents is proper only if it is reasonably likely to lead to evidence of substantially similar incidents. The rationale for the rule of "substantial similarity" is that such evidence invites the jury to infer from the evidence of the other accidents that a dangerous condition existed in the product which caused the accident in the case at bar. *Nachtsheim, supra,* at 1268-69. "As the circumstances and conditions of the other accidents become less similar to the accident under consideration, the probative force of such evidence decreases." *Id.* at 1269. To determine the proper scope of discovery "it is first necessary to define the plaintiff's legal claims." *Fine v. Facet Aerospace Products Company*, 133 FRD 439, 442 (S.D.NY 1990).

## PLAINTIFFS' REQUESTS FOR DOCUMENTS REGARDING OTHER INCIDENTS ARE OBJECTIONABLE

1. In a products liability suit such as this one, the proper scope of discovery of "other incidents" must be defined by that which is reasonably likely to lead to discovery of substantially similar incidents. This is defined by product defect alleged by the plaintiffs and the manner in which they claim the accident occurred. The plaintiffs' Amended Complaint alleges that the decedent "was in the subject swing when the swing's seat failed as a result of the seatback collapsing or folding forward, causing him to become entrapped between the fabric of the seat and the seat's metal frame..." (Doc. 21, ¶ 8). The plaintiff's forensic pathology expert, Dr.

6

Minyard, claims that the decedent suffered fatal injuries because the seatback of the swing folded "forward and downward" causing the decedent to be "bent in half at the torso with his chin pressing downward" resulting in his death by "positional asphyxia". (Doc. #36-1, Dr. Minyard Report, pages JM00845-46). The accident reconstruction opinions advanced by the plaintiffs' biomechanical engineering expert, Dr. Charles Benedict, Ph.D., are demonstrated in the re-enactment photographs attached to the plaintiffs' Motion to Compel. (Doc. 36-2) Dr. Benedict's theory of product defect is that the swing's design did not incorporate a mechanism to prevent the seatback from folding forward (See Ex. A, Benedict Report, p. J00854, ¶ 12.) Dr. Benedict has opined that the "seatback on the subject swing collapsed forward and bent Jermylin Murphy forward about the torso..." and that this position "compromised the child's ability to breath" (Benedict Report, November 16, 2009, p. JM00858). Dr. Benedict has further opined that Fisher-Price "should have designed the subject swing such that the seatback could not collapse forward..." (*Id.*, JM00859). The requests stated in Paragraphs 1 and 4 of Schedule B seek information about incidents entirely unrelated to that alleged product defect and unrelated to the manner in which the plaintiffs' experts claim the accident occurred. Therefore, these requests are overbroad and not reasonably calculated to lead to the discovery of admissible evidence.

2. Fisher-Price and the experts that it intends to call as witnesses at trial dispute the accident reconstruction opinions espoused by the plaintiffs' experts as well as the claim of those experts that the death of the decedent was caused by positional asphyxia. Nevertheless, in reliance upon the accident reconstruction and product defect theories advanced by the plaintiffs and their experts Fisher-Price produced all incident reports in which it is claimed that the seatback of a Model K7203 swing folded forward with a child in the seat regardless of how the incidents (38 in number) are otherwise described and regardless of whether or not any injury was reported. (Doc. #37, Plaintiffs' Supplemental Memorandum filed under seal, Exhibit 9). The

7

plaintiffs have made no showing of how discovery of reported incidents which do not involve a claim that the swing's seatback folded forward could possibly lead to the discovery of admissible evidence.

3. These requests go far beyond reports of incidents of the seatback folding forward and far beyond that which could possibly lead to the discovery of admissible evidence in this case. Paragraph 1 seeks documents related to "**any** actual or **potential** problem... or **any** consumer or retailer complaint, report or **suggestion**... involving issues of a child being out of position or falling out of seat, maneuvering out/over the seat, or head entrapment, or head to the side of the seat, or head entrapment." (emphasis added). Clearly, this request is over inclusive and seeks to reach much farther than incidents which occurred in a substantially similar manner to that hypothesized by the plaintiffs' experts or which could have been caused by the same product defect that the plaintiffs claim caused the accident at issue.

4. Paragraph 4 of Schedule B states a similarly overbroad request seeking all reports of consumer complaints categorized in accordance with 16 "Reason Codes." When a consumer makes a report to Fisher-Price regarding an injury or other concern related to a product the report is summarized in a database known as the Consumer Affairs Tracking System (CATS). One or more "Reason Codes" (often six or more) are assigned to each report. (See e.g. Doc. #37, Exhibit 8).[2] There is no "Reason Code" for a report that a swing seat folded forward. Reports describing such incidents contain many different Reason Codes depending upon the information given to Fisher-Price by the reporting consumers and the circumstances of the incident. In keeping with the proper legal standard defining the scope of permissible discovery, i.e. "reasonably calculated to lead to discovery of admissible evidence," Fisher-Price has produced

---

[2]The plaintiffs initially sought all reports involving 30 Reason Codes but narrowed their request to 16 because Fisher-Price has no reports for 13 of those codes and only one involving "Reason Code 1004-Alleged death." That report relates to the incident involving the plaintiff's decedent. A copy of that report was previously produced.

8

all reports which state or suggest that the seatback of a Model K7203 swing may have folded forward including descriptions such as "seat starts to come forward"; "seat was folded up"; "seat almost folded in"; "swing seat flipped over"; etc. (Doc. 37, Exhibit 9). All discoverable documents regarding other incidents have been produced.[3]

5. In the plaintiffs' Supplemental Memorandum of Law filed on April 28, 2010 (Doc. 37) the plaintiffs argue that Paragraphs 1 and 4 of Schedule B are proper requests because they seek "reports of other accidents or incidents with the swing model that involved the same or similar reasons that the Plaintiffs contend the swing failed resulting in the death of their infant son." (Doc. 37, p. 2, emphasis added). This argument is clearly misplaced. In fact, the plaintiffs' requests go far beyond incidents which are the "same or similar."[4]

6. The plaintiffs point to seven charts produced by Fisher-Price which compare among several swing models the numbers of complaints received from consumers related to "children out of position or falling out of seat"; "head to the side of the seat or head entrapment"; and "child maneuvering out/over seat". These studies involved all complaints of children "out of position" regardless of the cause stated in the complaint. The reports included in this statistical study may have, and probably did, include some instances where the seatback folded forward. However, to the extent that such reports were included in these studies they have been produced. Fisher-Price has reviewed all of the CATS reports for the Model K7203 swing and has produced

---

[3]Notwithstanding the production of these documents Fisher-Price does not concede that any of the incidents described in those documents are sufficiently similar to the incident involving the plaintiffs' decedent to warrant admissibility at trial. Fisher-Price produced them in discovery based upon the way the plaintiffs have defined their claim.

[4] The plaintiffs' Supplemental Memorandum, consisting of eight pages and exhibits 6, 7, 8, and 9, was filed under seal. (Doc. 37). The exhibits attached to that memorandum are marked "confidential" pursuant to a protective order because those documents contain proprietary, trade secret, and competitively sensitive information. This Response Brief does not reveal proprietary information. Therefore, the determination was made by the defendant, Fisher-Price, Inc., and its attorneys that the instant brief need not be filed under seal.

every one that describes any incident which involved a seatback folding forward. The plaintiffs' requests are nothing more than over-inclusive fishing expeditions.

7. The plaintiffs also argue that consumers may use various words and phrases when trying to describe an incident or defect in the swing and that Fisher-Price customer relations employees must make subjective decisions as to how each report should be recorded under specific Reason Codes. (Doc. 37, p. 7). That is precisely why the Reason Codes are irrelevant to locating reports of incidents which relate to the alleged product defect claims by the plaintiff or to incidents which occurred in a manner similar to the accident reconstruction opinions expressed by the plaintiffs' experts. Fisher-Price did not rely upon Reason Codes in responding to the plaintiffs' earlier discovery requests. It relied on the opinions of the plaintiffs' own experts which define the alleged product defect and the manner in which those experts believe that the accident occurred. The entire CATS database was searched and each narrative entry was read to locate reports that were in any way related to the seatback of a Model K7203 swing folding forward regardless of the Reason Code and regardless of how the incident was otherwise described. Those reports have been produced.

8. On pages 7 and 8 of their Supplemental Memorandum (Doc. 37) the plaintiffs complain that Fisher-Price has redacted the names, addresses and phone numbers of the persons who made the reports which have been produced. It is the corporate policy of Fisher-Price to protect the rightful privacy expectations of their customers. Consumer reports often contain information about injuries, medical treatment, and other personal matters. Names and addresses were redacted to protect the privacy of persons who have made such reports and to encourage consumers to report product problems. In an analogous situation consumers who make complaints to the Consumer Product Safety Commission can choose whether the information they give may be disclosed to product manufacturers, to anyone, or to no one. The consumers

who made the reports in question to Fisher-Price have not given permission for disclosure of their identities.

## REQUEST FOR DISCOVERY REGARDING MARKETING, ADVERTISING AND DISTRIBUTION

1. Schedule A, paragraphs 15 and 16 of the plaintiffs' notice seek the depositions of a witnesses knowledgeable about marketing, advertising, and distribution of the Model K7203 swing. This request is not reasonably calculated to lead to the discovery of any potentially admissible evidence beyond that which has already been disclosed in the course of discovery. All relevant and discoverable documents regarding these topics were produced by Fisher-Price over nine months ago. There is no need for depositions on these subjects. Fisher-Price's objections to this request should be sustained.

2. Paragraph 15 of Schedule A requests the deposition of a corporate representative with knowledge of marketing and advertising of the swing "including any advertising literature or advertising media such as newsprint and television." (Doc. 36, p. 4). The plaintiffs argue that their request for deposition testimony regarding marketing and advertising is reasonably calculated to lead to admissible evidence "as to Fisher-Price's suggested or demonstrated manners of use, assembly and maintenance of the swing by infants and their parents." (*Id.* at 4-5). The plaintiffs ignore the fact that Fisher-Price produced a large volume of documents in July, 2009 which relate to advertising, marketing, packaging, and product instructions including the instruction manuals distributed with this model swing. The documents produced, their bates numbers and descriptions of the documents are listed below:

| | |
|---|---|
| FP000702-736 | Instruction manuals and package inserts |
| FP000737-745 | Packaging artwork |
| FP000746-776 | FP Baby Gear Product Guide |
| FP000777-840 | Loving Your Grandbaby Magazine |
| FP000841-850 | Marketing material – US Program Info Sheet, Packaging Communications checklist, Child Research-Product Evaluation checklist, 2006 Product Line Review |
| FP000851-885 | Power Point Presentation, Fisher-Price, Baby Gear, Target, March 21, 2006 |

The plaintiffs have given no explanation as to why they would need deposition testimony in addition to the information contained in these documents. Seven weeks after the aforesaid documents were produced the plaintiffs took the depositions of seven Fisher-Price employees. No request was made at that time or in the subsequent six months for the deposition of a person knowledgeable about marketing or advertising. The objections of Fisher-Price should be sustained as to paragraph 15 of Schedule A.

3. Paragraph 16 is related to distribution of the specific swing involved in this accident. The plaintiffs motion complains that none of the Fisher-Price witnesses deposed to date have any "knowledge of the specific swing's distribution from its manufacturer in China to Fisher-Price's distribution center (s) to the Target retail store in Decatur, Illinois where the swing was purchased" and that the "most important" information about the distribution of the swing "are the dates it was distributed into the United States and when it was distributed to Defendant Target and left control of Defendant Fisher-Price." (Doc. 36, p 5-6) These dates are not relevant to any contested issue in the suit and moreover are unknown and unknowable. Fisher-Price, Inc. has admitted in its pleadings that it designed, tested, supplied, distributed, promoted, marketed, advertised, and sold the model swing which was allegedly involved in this accident. (Doc. #25, ¶ 6). The plaintiffs' motion states, incorrectly, that "Fisher-Price has **denied** in its answer to the Amended Complaint...Plaintiffs' allegations that the subject baby swing was purchased by

12

Plaintiffs in the spring of 2007 at Target's retail store in Decatur, Illinois." (Doc. 36, p. 6, emphasis added, *citing Doc. 25*, ¶ 7.) In fact, Fisher-Price did not deny that allegation but stated that it had insufficient information and, therefore, could neither admit nor deny it. (Doc. 25, ¶ 7). The plaintiffs make no other argument nor do they give any other explanation for their contention that the date the swing was distributed to Target or the date the swing left the control of Fisher-Price is relevant to any issue in the case. Further, the plaintiff's arguments ignore several relevant facts about which there is no dispute. The plaintiffs' swing bears date code 3126SJ. This indicates the date upon which the swing was manufactured--November 8, 2006. The swing has no serial number that would enable Fisher-Price to track its path of distribution after the date it was manufactured. Plaintiff Megan Whitney claims that she purchased the swing at the Target store in Decatur, Illinois. Because it was a cash sale Target is unable to verify whether or not the swing was actually purchased from them at that store or establish the date of the sale. Certainly, no Fisher-Price employee has any knowledge of when or where this retail sale occurred.

    4.    Paragraph 5 of Schedule B requests:

> Color copies of **all** documents relating to **any possible** risk, hazard, or danger to infants by flexion or obstruction of an infant's neck, the compromising of an infant's breathing or narrowing of an infant's airway, an infant's chin on his or her chest, the slumping forward of an infant's head, or the folding down of an infant's head.

(Doc. 36-3, p. 8 of 8, emphasis added)

The request is not limited in time, to the product involved in this suit, or to the manner in which the plaintiffs' experts theorize the death of the decedent was caused. It seeks documents related to at least seven different types of risks, hazards, or dangers. The request is clearly overbroad on its face. Fisher-Price has been in the children's products and toy business for 80 years. It has designed and sold thousands of products. Compliance with such a request would be

13

burdensome, time consuming, and expensive. The plaintiffs have made no attempt to fashion a reasonable request. The plaintiffs argue that the "specific risks, hazards and dangers referenced in the request are the same as those Plaintiffs' contend caused Jermylin Murphy's death after the baby swing collapse [sic] on him." (Doc. 36, p. 8 of 14). This request reaches far afield from the manner in which their experts opine the decedent suffered fatal injury and goes well beyond seeking information that is reasonably calculated to lead to the discovery of evidence which would be admissible in this case. Dr. Minyard hypothesizes that the decedent died when the seatback of the swing collapsed "forward and downward" causing the child to be "bent in half at the torso with his chin pressing downward, his face tilting downward against the seatback tube..." and thereafter the cloth seat pad became detached from the seatback frame. (Doc. 36-1, pp. JM00845-46). Fisher-Price has already produced all documents related to any incident in which it was claimed that the seatback of a K7203 swing folded forward regardless of whether or not any injury or breathing difficulty was suspected or reported. Fisher-Price has also informed the plaintiffs in the course of discovery that it has no documents relating to any report that the seat pad of any Model K7203 swing became detached while in use under any circumstances. Fisher-Price has produced all documents related to their consultation with a medical expert, Dr. Gary Deegear with respect to the potential for compromised breathing. See FP004854-62. Further, Fisher-Price has searched its CATS database and found no report for the Model K7203 swing categorized with the Reason Code "1003-potential suffocation/asphyxiation." The plaintiffs' request is extremely overbroad. It is also burdensome because it is not limited by time or by product. It is not reasonably calculated to lead to the discovery of admissible evidence. All relevant and discoverable, non-privileged documents have been produced. Therefore, Fisher-Price should not be compelled to comply with his request.

14

WHEREFORE, the defendant, Fisher-Price, Inc., asks that this Honorable Court enter an order denying the plaintiffs' Second Motion to Compel Discovery.

WILLIAMS MONTGOMERY & JOHN LTD.

/s/Edward J. Murphy  3126287

C. Barry Montgomery
Edward J. Murphy
WILLIAMS MONTGOMERY & JOHN LTD.
233 South Wacker Drive, Suite 6100
Chicago, Illinois 60606
(312) 443-3200

28073.00A2B9/bg/

IN THE UNITED STATES DISTRICT COURT FOR
THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JERMALE MURPHY SR. and MEGAN WHITNEY, as Special Administrators of the Estate of JERMYLIN DEYVAUGHN MURPHY, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>FISHER-PRICE, INC., and TARGET CORPORATION<br><br>Defendant. | No. 09 CV 02062 |

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2010 I electronically filed the attached document with the Clerk of the United States District Court for the Central District of Illinois using the CM/ECF system which sent notification of such filing to the following:

Gary F. Geisler
Geisler Law Offices
241 Main Street, P.O. Box 1547
Decatur, IL    62525
gfglaw@comcast.net

Shane M. Dean
Bozeman Jenkins & Matthews
114 E. Gregory Street
Pensacola, Florida 32502
SDean@bjm-law.com

WILLIAMS MONTGOMERY & JOHN LTD.

/s/Edward J. Murphy  3126287

C. Barry Montgomery
Edward J. Murphy
WILLIAMS MONTGOMERY & JOHN LTD.
233 South Wacker Drive, Suite 6100
Chicago, Illinois 60606
(312) 443-3200