

**Engineering Analysis &
Accident Reconstruction**

3660 Hartsfield Road, Ste. 123
Tallahassee, FL 32303

Phone (850) 668-3100
Fax (850) 575-8454

www.becconsult.com

November 16, 2009

VIA E-MAIL (sdean@bjm-law.com)

Mr. Shane M. Dean
Bozeman, Jenkins & Matthews
114 E. Gregory Street
Pensacola, FL 32502

RE:   Murphy, Jermale v. Fisher-Price – Report of Findings

FILE: BEC Project No. 12846

Dear Mr. Dean:

I have completed the preliminary analysis of the above-referenced incident. During my analysis, I reviewed, analyzed, and considered the following materials and items:

1. Depositions
    a. Whitney, Megan - 17JUL09
    b. Murphy, Jermale Sr - 17JUL09
    c. Steinwachs, Michael P. – 22SEP09
    d. Pilarz, Catherine – 23SEP09
    e. Taft, Joel – 23SEP09
    f. DeRubes, John – 24SEP09
    g. Szymanski, Matthew Alan – 24SEP09
    h. Weber, Deborah – 25SEP09
    i. Brown, Michele – 25SEP09

2. Disc
    a. CD - Plaintiff Jermale Murphy's recorded call to 911
    b. CD - Defendant Fisher-Price, Inc.'s representative's demonstration on March 1, 2007, title "Swing Can Collapse Fully" (FP004537)
    c. CD - Autopsy photos
    d. DVD -Deposition of Megan Whitney - 17JUL09
    e. DVD - Deposition of Jermale Murphy Sr - 17JUL09
    f. DVD – Deposition of Mike Steinwachs – 22SEP09
    g. DVD – Deposition of Catherine Pilarz – 23SEP09
    h. DVD – Deposition of Joel Taft – 23SEP09
    i. DVD – Deposition of John DeRubes – 24SEP09

**Engineering Services   -   Graphics   -   Research**



EXHIBIT A

JM00852

    j. DVD – Deposition of Matthew Szymanski – 24SEP09
    k. DVD – Deposition of Deborah Weber – 25SEP09
    l. DVD – Deposition of Michele Brown – 25SEP09

3. Evidence
   a. Exemplar Fisher-Price Rainforest Open-Top Take-Along-Swing - Model #K7203
   b. Exemplar Fisher-Price Rainforest Open-Top Take-Along-Swing - Model #M6709

4. Medicals
   a. Decatur Ambulance Services (JM00721-JM00727)
   b. Decatur Fire Department (JM00728-JM00729)
   c. Decatur Memorial Hospital (JM00730-JM00760)
   d. Autopsy report of Coroner's Physician Jessica H. Bowman, MD
   e. Records of Coroner Michael E. Day (JM00078-JM00090) including photographs (5)
   f. Death certificate (JM00097)
   g. Pre-death medical records of Dr. Vineeta Chandra (JM00781-JM00795)
   h. Pre-death medical records of the Community Health Improvement Clinic (JM00796-JM00797)

5. Other
   a. Recall notice - Fisher-Price Rainforest Open-Top Take-Along-Swing
   b. Fisher-Price recall announcement with the US Consumer Product Safety Commission dated 30MAY07 Release #07-197 (FP000212-FP000213)
   c. Mattel Consumer Relations Answer Center Recall Information website information (JM00098-JM00099)
   d. Illinois Department of Public Health Children's Product Safety Notice (JM000189)

6. Photographs
   a. BEC - Exemplar intake 09OCT09 (17)
   b. Client - Seat hub (2)
   c. Client - Accident victim (5)
   d. Client - Autopsy (JM00088-JM00096 and JM00798-JM00831) (22)

7. Pleadings
   a. Complaint
   b. Amended Complaint
   c. Protective Order Regarding Production of Confidential Proprietary and Trade Secret Information
   d. Plaintiff's Answers to Interrogatories Propounded by Defendant Fisher-Price, Inc.
   e. Interrogatories Propounded to Plaintiffs by Defendant, Fisher-Price, Inc

Mr. Shane M. Dean
BEC Project No. 12846
November 16, 2009
Page 3

      f. Plaintiff's Responses to Defendant Fisher-Price, Inc.s Request for Production of Documents
      g. Fisher-Price, Inc.,s Request for Production of Documents to Plaintiff's
      h. Fisher-Price, Inc.'s Answers to Plaintiff's First Interrogatories
      i. Fisher-Price Inc.'s Responses to Plaintiffs' First Request for Production

8. Reports
    a. Other report of incidents to the Consumer of Product Safety Commission
    b. Consumer Product Safety Commission Epidemiologic Investigation Report (FP000023-FP000048)
    c. Decatur Police Department Report (JM00001-JM00061)
    d. In-Home Test report dated 28SEP06 (FP000214-FP000225)
    e. In-Home Test phone survey report dated 11DEC06 bates no. (FP002031-FP002033)
    f. In-Home Test report dated 12DEC06 (FP000226-FP000234 and FP001128-FP001137)
    g. In-Home Test report dated 29JAN07 (FP000235-FP000245)
    h. Fisher-Price's summaries of report of incidents titled:
        i. Summary of report of children our of position or falling out of seat (FP004885)
        ii. Summary of reports of head to the side of the seat or head entrapment in take along swings (FP004494)
        iii. Summary of reports of child maneuvering out/over the seat or head entrapment in take along swings (FP004495)
        iv. Rates of children out of position or falling out of seat (FP004866-FP004867)
        v. Summary of repost of occupant out of position or head entrapment in take along swings (FP004887)
        vi. Rates of children out of position or falling out of seat (FP004789-FP004791)

9. Technical Data
    a. Event Timeline
    b. Fisher-Price's graphs of summaries of reports of incidents (FP004789-FP004791 and FP004806-FP004810)
    c. Product Requirements Documents (FP000360-FP000647)
    d. Swing Design Drawings (FP000334-FP000335 and FP000317-FP000325)
    e. Engineering Notices and Parts Lists (FP000246-FP000316)
    f. Swing Laboratory Testing Records (FP000100-FP000110, FP000147-FP000149, FP000136-FP000146, FP000162-FP000164, FP000165-FP000171, FP000111-FP000124, and FP000125-FP000128)
    g. Fabric Design Drawings for K7203 Model Rainforest Swing
    h. Rainforest instructions (FP000702-FP000717)

      i. Supplemental warning flyers sent with a later version of the swing (FP000718-FP000720)
      j. Code of Ethics for Engineers – National Society of Professional Engineers
      k. Product Safety, Management Guidelines – National Safety Council
      l. Accident Prevention Manual for Industrial Operations 6th Edition – National Safety Council
      m. Safety aspects, Guidelines for their inclusion in standards – ISO Guide 51
      n. Safety Starts on the Drawing Board – Stanley Kalin, P.E.

The review and analysis of the above materials reveals the following facts:

1. On the morning of January 2, 2008, Jermylin Murphy was found deceased within a Fisher-Price Rainforest Open Top Take-Along Swing, model number K7203.

2. Jermylin Murphy was approximately 8 months old at the time of his death and weighed 7,950g (or approximately 17.5 lbs).

3. The instruction manual that Fisher-Price provided to consumers with the Rainforest Open Top Take-Along Swing indicates that the maximum weight limit for the subject swing is 25 lbs.

4. The Fisher-Price Rainforest Open Top Take-Along Swing, model number K7203, was sold between November 2006 and May 2007.

5. The Rainforest Open Top Take-Along Swing, model number K7203, utilized a revised design from a previous product, the Open Top Take-Along Swing model 79028. Production requirement documents indicate that the revised design incorporates a larger and more "sacked out" seat.

6. The subject swing bears the date code: 3126SJ. In their first interrogatory responses, Fisher-Price deciphers that code to assert that the swing was produced by Jetta Co. Ltd. in Hong Kong, China on November 8, 2006.

7. Fisher-Price performed at least five iterations of in-home testing on the K7203 model swing, prior to this incident, between September 2006 and June 2007.

8. In four of these tests (Report dates 28SEP06, 11DEC06, 12DEC06, and 29JAN07), subjects discussed issues relative to the child becoming slumped/folded in the seat

and/or the seatback folding forward. The following represents a sample of those comments:

a. "When my daughter was strapped in the seat and tried to sit forward the seat back would come forward. One time (her first time in the swing) her head was resting on the arm of the swing. She was slumped forward. This was a big concern. A second time she was slumped over in the seat hanging down and I was very scared. Stopped using the swing after that." (28SEP06)

b. "The back does not lock – one time 2 year old was pushing baby in the swing and she pushed it forward and it folded right in half like a sandwich. No problems but seat just doesn't seem quite big enough. Baby is 4 months, 15 to 17 lbs. He seems a little crunched in the seat. (11DEC06)

c. "Two-year-old sister tried to push him like on our regular swing and the seat folded baby up inside. There should maybe be a lock to keep the swing open (9 weeks)."(29JAN06)

9. In the fifth test (Report date 25JUN07), which took place in June 2007 after the subject seat had been recalled (See fact 17 below), there was no complaint relative to the seatback folding forward.

10. In response to the in-home test feedback, Fisher-Price documented the following action items relative to the issues in this matter:

   a. Changes were made to the backrest and footrest angles to address the problem of the swing tipping forward/backward too far. (28SEP06)

   b. A warning was added relative to preventing breathing difficulties (12DEC06) (See fact 14 below)

11. Subsequent to production of the subject swing, Fisher-Price executed the following changes to the design/composition:

   a. A support pad was added in December 2006 to provide additional support to the child and restrict side-to-side movement.

   b. The swing arms were lengthened in February 2007 to lower the center of gravity and improve the movement of the swing.

   c. A plastic boss was added to the seat hub in March 2007 to prevent the seat back from folding forward.

12. According to Matthew Szymanski's deposition testimony, at the time the subject swing was manufactured, Fisher-Price used the geometric design of the seat hub to

prevent the seatbacks on other products from collapsing forward. (Deposition of Matthew Szymanski, pp 78-82)

13. Fisher-Price provided one warning in the manual for the subject swing relative to its operation:

    *"Warning. To prevent serious injury or death from falls and being strangled in the restraint system:*
    - *Always use the restraint system.*
    - *Never use with an active child who may be able to climb out of the seat.*
    - *Never leave child unattended.*
    - *Never use on any elevated surface."*

14. When Fisher-Price added the infant support pad to the Rainforest Open Top Take-Along Swing in December 2006, they also revised the warnings provided to consumers. The following warning was provided for new and existing inventory:

    *"Warning. Prevent breathing difficulties:*
    - *Never allow baby to slouch to the side or baby's head to flop forward."*

    Note: These warnings were followed by instructions for supporting the baby based on the model to which the warning applied.

15. Fisher-Price performed a number of analyses that compared the K7203 to a selection of other products with respect to consumer complaints, injuries, etc. Relative to the sample, the K7203 consistently had the highest (or very near the highest) rate of complaint and the highest rate of reported injuries.

16. Mr. Joel Taft, Manager of Product Safety at Fisher-Price, testifies that Papasan-style frame used on the K7203 correlates with the high rate of complaint for the swing because the wider platform allows the occupant more freedom of movement at their hips and their head. (Deposition of Joel Taft, pp 83-84)

17. The Consumer Products Safety Commission (CPSC), in cooperation with Fisher-Price, recalled the Rainforest Open Top Take-Along Swing (models K7203, K7192, and K7195) on May 30, 2007 due to an entrapment hazard.

18. An autopsy performed by Jessica H. Bowman, M.D. identified the immediate cause of Jermylin Murphy's death to be sudden infant death syndrome (SIDS). In her circumstantial summary, she identifies a postmortem indentation of the head compatible with the swing in which the decedent was found.

Mr. Shane M. Dean
BEC Project No. 12846
November 16, 2009
Page 7

Mr. Shane M. Dean
BEC Project No. 12846
November 16, 2009
Page 7

19. A subsequent study of this matter by Andrea N. Minyard, M.D., a forensic pathologist, identified the cause of death as positional asphyxia as a result of Jermylin Murphy being wedged in the collapsed swing seat. In her summary she states that Jermylin was bent in half at the torso with his chin pressing downward and his face tilting downward against the seat back tube.

20. Testing performed by BEC Consulting LLC, found that a downward vertical force of approximately 5 lbs. (when applied to the top surface of the seat bottom) is the minimum force necessary to collapse the seatback forward on the subject swing.

Based on the above facts and my education, training and experience, it is my preliminary opinion, to a high degree of engineering and scientific certainty, that:

1. At 17.5lbs, Jermylin Murphy was well within the 25 lb. weight limit specified in the product literature for the subject K7203 swing.

2. The seatback on the subject swing collapsed forward and bent Jermylin Murphy forward about the torso so that the right side of his head came to rest on the seat frame. This position compromised the child's ability to breathe.

3. The subject swing was defective and unreasonably dangerous for its intended use and foreseeable misuse in that the seatback can unintentionally and unexpectedly collapse forward while in use thus trapping a child in a dangerous and potentially fatal folded position, such as it did in this accident.

4. Fisher-Price knew that the wide platform of the Papasan-style frame used on the subject swing allows occupants more freedom of movement and enables them to become out of position which increases the likelihood of serious injury.

5. In-home testing of the K7203 model swing prior to production put Fisher-Price on notice that children can shift their position within the seat and that the seatback can collapse forward unintentionally and unexpectedly as it did in this accident.

6. Fisher-Price totally ignored their own test reports identifying the hazardous nature of the subject swing when they put the swing into the stream of commerce without changing the design to prevent the seatback from collapsing unintentionally and unexpectedly.

7. Fisher-Price knew that the seatback on the subject swing could collapse forward unintentionally and unexpectedly prior to putting the subject swing into the stream or commerce and should have known that collapse of the seatback puts a child, like Jermylin Murphy, at great foreseeable risk to suffer serious and potentially fatal injuries.

8. Fisher-Price either failed to properly complete a failure modes and effects analysis (FMEA) on the subject seat or they simply ignored the results of such an analysis.

9. A properly executed FMEA, with appropriate follow through, would have identified the collapse of the seatback as a potential hazard and Fisher-Price would have recognized the risk of potentially fatal injury associated with that hazard and should have eliminated the defect through design as they did for other products with their geometric design.

10. Fisher-Price failed to follow the hierarchy of design safety requirements for eliminating hazards. Hazards should be eliminated through an inherently safe design. If a hazard cannot be eliminated by design, then feasible safeguards and warnings shall protect against the hazard. If guarding is not feasible, then adequate and properly designed warnings shall be provided.

11. Fisher-Price should have designed the subject swing such that the seatback could not collapse forward, as it did in this incident, under any circumstance.

12. An appropriate design to prevent the seatback from collapsing forward was technically and economically feasible at the time the subject seat was manufactured. Fisher-Price already utilized geometric designs on other products at that time to prevent a seatback from collapsing forward. Had Fisher-Price used that design on the K7203 model swing, this accident would not have happened.

13. But for Fisher-Price's failure to identify and effectively design against the inherent and unreasonable fatal hazard resulting from the seatback on the subject swing collapsing forward, this accident would not have occurred and Jermylin Murphy would not have perished.

Mr. Shane M. Dean
BEC Project No. 12846
November 16, 2009
Page 9

I reserve the right to modify or add to my opinions subject to review and analysis of additional discovery information, test data, technical information, or other materials obtained during the discovery process.

Yours very truly,

BEC CONSULTING, LLC

Charles E. Benedict, Ph.D., P.E.
Consultant

/glg

JM00860