28073.00A2B9/bg/848671

## IN THE UNITED STATES DISTRICT COURT FOR
## THE CENTRAL DISTRICT OF ILLINOIS

JERMALE MURPHY, SR. and MEGAN WHITNEY, as Special Administrators of the Estate of JERMYLIN DEYVAUGHN MURPHY, deceased,

  Plaintiffs, v.

FISHER-PRICE, INC. and
TARGET CORPORATION,

  Defendants.

09 CV 02062

### FISHER-PRICE, INC.'S RESPONSE TO PLAINTIFFS' SECOND REQUEST FOR ADMISSIONS

1. On the day of his death, Jermylin Murphy weighed approximately 7,950 grams or approximately 17.75 pounds.

   **RESPONSE**

   The answering defendant, Fisher-Price, admits that on the day of his death Jermylin Murphy's weight was recorded in the autopsy report of Dr. Jessica Bowman to be 7,950 grams which is approximately 17.5 pounds. Fisher-Price denies that he weighed approximately 17.75 pounds on the day of his death.

2. In a medical appointment on 12/20/07, Jermylin Murphy's weight was noted to be 17.3 pounds, and his height was noted to be 68.5 centimeters. (JM00781 and JM00783).

   **RESPONSE**

   Fisher-Price, Inc. admits that in the record of a medical appointment on 12/20/07 Jermylin Murphy's weight was noted to be 17.3 pounds, and his height was noted to be "68.5". The units for the height measurement are not noted on the medical record referenced in this request.

3. In a medical appointment on 12/20/07, Jermylin Murphy was noted to be normal in growth and development. (JM00784).

1

EXHIBIT B

### RESPONSE

Admitted.

4. There is no difference in the hard components of the Fisher-Price Rainforest Open Top Take-Along Swings with product numbers K7192 and K7195 and the Fisher-Price Rainforest Open Top Take-Along Swing with product number K7203.

### RESPONSE

Admitted.

5. The swing model was revised from one or more prior Fisher-Price Take-Along Swing models to be more "sacked out."

### RESPONSE

Fisher-Price, Inc. objects to this request because it is vague and subject to multiple interpretations and because it irrelevant to any issue in this lawsuit. Subject to these objections and without waiving them Fisher-Price, Inc. denies this request.

6. The swing model was intended to have more sackage than the Fisher-Price Take-Along Swing model or models the swing model was revised from.

### RESPONSE
Fisher-Price, Inc. objects to this request because it is vague and subject to multiple interpretations and because it irrelevant to any issue in this lawsuit. Subject to these objections and without waiving them Fisher-Price denies this request.

7. The seat of the swing model did not have the sackage intended by Fisher-Price.

### RESPONSE

Fisher-Price, Inc. objects to this request because it is vague and subject to multiple interpretations and because the request is irrelevant to any issue in this lawsuit. Subject to these objections and without waiving them Fisher-Price denies this request.

8. The sackage of the swing model was determined by a Fisher-Price Engineer to have veered far from its original design.

### RESPONSE

Fisher-Price, Inc. objects to this request because it is vague and subject to multiple interpretations and because it irrelevant to any issue in this lawsuit. Subject to these objections and without waiving them Fisher-Price denies this request.

9. The swing was not designed free of defects when used in a manner reasonably foreseeable.

   RESPONSE

   Fisher-Price, Inc. objects to this request because it is vague, subject to multiple interpretations, and confusing. Fisher-Price, Inc. further objects to this request because it is overbroad and irrelevant to any contested issue in this lawsuit in that it is not confined to alleged product defects which could have been causally related to the death of the plaintiff's decedent. Subject to these objections and without waiving them Fisher-Price, Inc. denies this request.

10. The swing was not manufactured free of defects.

    RESPONSE

    Fisher-Price, Inc. objects to this request because it is vague and subject to more than one interpretation. Fisher-Price, Inc. further objects to this request because it is overbroad and irrelevant in that it is not confined to alleged defects which could have been causally related to the death of the plaintiff's decedent. Subject to these objections and without waiving them Fisher-Price, Inc. denies this request.

11. The swing was not tested to ensure that it would perform as intended and expected under normal or reasonably foreseeable use.

    RESPONSE

    Denied.

12. Fisher-Price was in the chain of distribution of the swing model.

    RESPONSE

    Admitted

13. The swing model was distributed to Defendant Target Corporation.

    RESPONSE

    Admitted on information and belief.

14. The swing model was sold by Fisher-Price to Target Corporation.

    RESPONSE

    Admitted on information and belief.

15. Fisher-Price had knowledge from its In-Home Testing records that the swing model had been used by a baby to sleep in overnight.

    ### RESPONSE

    Fisher-Price admits that it had information from its In-Home testing reports that a baby had "spent a few nights sleeping in..." a Model K7203 swing. Except as explicitly admitted herein, Fisher-Price denies this request.

16. The swing model was sold by Target Corporation to Plaintiff Megan Whitney in approximately February, 2007.

    ### RESPONSE

    Fisher-Price, Inc. has made reasonable inquiry to Target Corporation and to the plaintiffs through discovery regarding the subject matter of this request and has determined that the information known to it and the information which it can readily obtain is insufficient to enable it to admit or deny this request. Target has no documents which would enable it to identify products sold to Megan Whitney. The only information known to Fisher-Price, Inc. regarding the subject of this request is that obtained from the plaintiffs through discovery.

17. The swing model was purchased by Plaintiff Megan Whitney in the same condition in which it had left the control and possession of Fisher-Price.

    ### RESPONSE

    Fisher-Price, Inc. has made reasonable inquiry to Target Corporation and to the plaintiffs' through discovery regarding this request and has determined that the information known to it and the information which it can readily obtain is insufficient to enable it to admit or deny this request. Target has no documents which would enable it to identify products sold to Megan Whitney or to determine the condition of any specific product which may have been purchased by her. The only information known to Fisher-Price, Inc. regarding the subject of this request is that obtained from the plaintiffs through discovery.

18. The swing's seat does not have a mechanism sufficient to prevent the unintentional collapse of the seat while being occupied by a baby.

    ### RESPONSE

    Fisher-Price, Inc. objects to this request because it is vague and contains the undefined term "unintentional collapse of the seat." Subject to this objection and without waiving it Fisher-Price, Inc. states: denied.

19. The swing's seat permits the accidental collapse while in use by a baby who is within the weight limitations of the swing.

### RESPONSE

Fisher-Price, Inc. objects to this request because it is vague and uses the undefined term of "accidental collapse" of the "swing's seat." Subject to this objection and without waiving it Fisher-Price, Inc. states: denied.

20. The swing's seat fails to prevent the accidental collapse while in use by a baby who is within the weight limitations of the swing.

### RESPONSE

Fisher-Price, Inc. objects to this request because it is vague and uses the undefined term of "accidental collapse". Subject to this objection and without waiving it Fisher-Price, Inc. states: denied.

21. The swing's seat fails to eliminate the possibility of presenting a mechanical hazard capable of injuring portions of the human body of a baby user when in normal use or when subjected to reasonably foreseeable damage or abuse.

### RESPONSE

Fisher-Price, Inc. objects to this request because it is vague and uses the undefined terms "mechanical hazard", "normal use," and "reasonably foreseeable damage or abuse." Fisher-Price, Inc. further objects to this request because it is irrelevant to any issue in this lawsuit. No information regarding any "damage or abuse" of the swing which occurred prior to the death of the plaintiffs' decedent has been revealed through discovery. Subject to these objections and without waiving them Fisher-Price, Inc. denies that the swing or any part of it, as designed and manufactured presented a mechanical hazard capable of injuring portions of the human body of a baby user in normal use.

WILLIAMS MONTGOMERY & JOHN LTD.

Edward J. Murphy

Edward J. Murphy
Anndra L. Masters
Williams Montgomery & John Ltd.
Attorney for Defendants
233 South Wacker Drive, Suite 2100
Chicago, Illinois 60606-3094
(312)443-3200

5

28073.00A2B9/

IN THE UNITED STATES DISTRICT COURT FOR
THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JERMALE MURPHY SR. and MEGAN WHITNEY, as Special Administrators of the Estate of JERMYLIN DEYVAUGHN MURPHY, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>FISHER-PRICE, INC., and TARGET CORPORATION<br><br>Defendant. | No. 09 CV 02062 |

## CERTIFICATE OF SERVICE

I certify that I served copies of the attached document, **Fisher-Price's Responses to Plaintiffs' Second Request for Admissions**, upon the below-named individuals by facsimile and by depositing same in the U.S. Mail at 233 S. Wacker Drive, Chicago, Illinois on April 29, 2010.

Gary F. Geisler
Geisler Law Offices
241 Main Street, P.O. Box 1547
Decatur, IL 62525
FAX 217-423-8221

Shane M. Dean
Bozeman Jenkins & Matthews
114 E. Gregory Street
Pensacola, Florida 32502
FAX 850-434-5242

WILLIAMS MONTGOMERY & JOHN LTD.

_/s/ Edward J. Murphy_

C. Barry Montgomery
Edward J. Murphy
WILLIAMS MONTGOMERY & JOHN LTD.
233 South Wacker Drive, Suite 6100
Chicago, Illinois 60606
(312) 443-3200