VIDEOTAPED DEPOSITION
CATHERINE PILARZ

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

------------------------------------------

JERMALE MURPHY, SR. and MEGAN WHITNEY,
as Special Administrators of the Estate
of JERMYLIN DEYVAUGHN MURPHY, deceased,

                Plaintiffs,

      - vs -     Case Number
                    09 CV 02062

FISHER-PRICE, INC. and
TARGET CORPORATION,

                Defendants.

------------------------------------------

    Videotaped deposition of CATHERINE PILARZ, taken pursuant to the Federal Rules of Civil Procedure, in the offices of JACK W. HUNT & ASSOCIATES, INC., 1420 Liberty Building, Buffalo, New York, on September 23, 2009, commencing at 12:53, before LORI K. BECK, CSR, RDR, CRR, Notary Public.

    JACK W. HUNT & ASSOCIATES, INC.


EXHIBIT E

```
 1   APPEARANCES:     BOZEMAN, JENKINS & MATTHEWS, P.A.,
                      By SHANE M. DEAN, ESQ.,
 2                    114 E. Gregory Street,
                      Pensacola, Florida  32502,
 3                    Appearing for the Plaintiffs.

 4                    WILLIAMS MONTGOMERY & JOHN LTD.,
                      By EDWARD J. MURPHY, ESQ.,
 5                    20 North Wacker Drive, Suite 2100,
                      Chicago, Illinois  60606-3094,
 6                    Appearing for the Defendants.

 7   PRESENT:         PAUL CHARLAND, Director,
                      Risk Management,
 8                    Fisher-Price, Inc.

 9                    MATTHEW W. MESSING,
                      Videographer.
10

11   K A T H E R I N E   P I L A R Z, 692 Auburn Avenue,

12   Buffalo, New York 14222, after being duly called

13   and sworn, testified as follows:

14

15          EXAMINATION BY MR. DEAN:

16

17          Q.   Good afternoon, Ms. Pilarz.  My name is

18   Shane Dean.  I represent the parents of Jermylin

19   Murphy, who was in a Fisher-Price Rainforest swing,

20   model number K7203, on January 2nd, 2008, when he

21   died in the swing.

22          And I'm here today to ask you some questions

23   regarding that incident and -- and that swing.
```

1  And if you can, can you show me that?
2  A. I'm not aware of a report like that.
3  Q. Can you tell us what the reasons for
4  the recall were?
5  What type of problems were the basis for the
6  recall?
7  A. The recall was based on the reports of
8  babies being out of position.
9  Q. And when you say "out of position,"
10 does that include any reports of children being out
11 of position because they were falling forward or
12 the seat was falling forward?
13 A. It was really to address the
14 side-to-side out of position baby.
15 Q. Is that the only problem, the
16 side-to-side factor?
17 A. That's the reason the product was
18 recalled.
19 Q. Is that the only reason?
20 A. Yes.
21 Q. The issue of a child may get side to
22 side and -- and get their head entrapped --
23 A. Yes.

1 Q. -- in the swing?

2 Did the -- was the recall based, in whole or

3 in -- in whole or in part, on any issue of the seat

4 folding?

5 A. No.

6 Q. I'm looking at an e-mail -- I don't

7 have it in front of me, but it's Bates stamped 4541

8 from Janice Salvo to Chris Schaden, and what it

9 says is:

10 There will be a recall of the swing. There

11 have been instances where the baby leaned forward

12 in the swing, falling over, and where the baby has

13 leaned to the side and getting his head/her head

14 caught in between the bars.

15 Does that refresh your recollection or -- as

16 to whether or not the recall included instances

17 where the baby leaned forward in the seat as well?

18 MR. MURPHY: Can you give us a date on that?

19 MR. DEAN: Yes, it's dated May 4th, 2007.

20 MR. MURPHY: Do you have the question in

21 mind, or would you like to hear it again?

22 Because we don't have the document in front

23 of us.